**STATE** of Missouri, Respondent,

v.

Walter J. **REYNOLDS**, Appellant.

Nos. WD 43358, WD 43443.

Missouri Court of Appeals,
Western District.

July 28, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1992.

Application to Transfer Denied
Oct. 27, 1992.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

### ORDER

Patrick J. Berrigan, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Walter J. Reynolds appeals from his convictions for murder in the second degree, § 565.021, RSMo 1986,[1] armed criminal action, § 571.015, assault in the first degree, § 565.050, armed criminal action, § 571.-015, robbery in the first degree, § 569.020, and armed criminal action, § 571.015. Mr. Reynolds raises four points on appeal, claiming that the trial court erred in (1) overruling his oral motion in limine and trial objections to the prosecutor informing the jury that witness Leo Butler, Jr., had entered a guilty plea to the offenses for which Mr. Reynolds was on trial; (2) denying his motion to modify the reasonable doubt instruction; (3) overruling his motion for discovery of the arrest and conviction reports for witnesses; and (4) overruling his oral motion in limine and trial objections to the introduction of the homicide victim's photograph. The judgment of conviction is affirmed.

On the evening of October 10, 1988, William Reynolds and Leo Butler were riding around in a truck belonging to Mr. Butler's father. Mr. Reynolds and Mr. Butler had been drinking heavily and had smoked seven or eight "primos," cigarettes consisting of a mixture of marijuana and cocaine. They discussed the idea of robbing someone in order to pay back debts that each owed. Both men were armed with revolvers; Mr. Butler with a .38 and Mr. Reynolds with a .357 Magnum. At approximately 3:00 a.m. on the morning of October 11, 1988, the men were driving on Wornall Road where they spied two men in the parking lot of AB's Lounge. Mr. Butler turned the truck around, stopped and parked the vehicle where it could not be seen.

The men that Mr. Reynolds and Mr. Butler spotted in the parking lot were Harold Garren and Gary Chase. They had spent the evening together watching Monday Night Football at Clancy's Bar. After leaving Clancy's, they went to AB's Lounge. Upon leaving AB's, the two men stood talking in the parking lot.

Mr. Reynolds and Mr. Butler approached Mr. Garren and Mr. Chase with revolvers drawn. The victims were instructed to

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

turn over their wallets to the two robbers. Mr. Reynolds struck Mr. Garren over the head as Mr. Garren attempted to get out his wallet. Mr. Garren managed to get his wallet out. It was taken from him and he was hit again, the blow knocking him to the ground. He heard one of the robbers asking Mr. Chase "where is it?" Both victims were ordered to get down on the ground. Mr. Reynolds shot both of the victims in the back of their legs. Mr. Garren received medical attention and eventually recovered from the gunshot. Mr. Chase died as a result of massive bleeding caused by a gunshot wound. The bullet had entered his left buttock and severed his left femoral artery.

Mr. Butler told his mother of his involvement. At her behest he contacted the police, eventually confessing his involvement in the crimes to the police. Mr. Butler reached a plea agreement with the prosecutor in return for his testimony against Mr. Reynolds. The cause proceeded to trial and the jury returned a verdict of guilty on all six counts, assessing a term of twenty years' imprisonment on the murder charge and terms of fifteen years' imprisonment on each of the other five counts. The court imposed the recommended sentences, consecutively. Mr. Reynolds appeals.

In his first point, Mr. Reynolds claims that the trial court erred in overruling his oral motion in limine and trial objections to the prosecutor informing the jury in *voir dire* and during the direct examination of state's witness, Leo Butler, Jr., of Mr. Butler's guilty plea and plea agreement. He claims that the plea information prejudiced Mr. Reynolds' presumption of innocence; inferred that Mr. Reynolds was guilty because Mr. Butler was guilty; and deprived Mr. Reynolds of a right to his own trial independent of a judicial determination as to the guilt of his co-actor.

■ In general, the admission into evidence or the disclosure to the jury by the state that a jointly accused defendant has pled guilty is error. *State v. Lingar*, 726 S.W.2d 728, 735 (Mo. banc) *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). "[A] defendant is entitled to be tried on his own without having his guilt prejudged by what has happened to another, it being considered an elementary principle of justice that one man shall not be affected by another's act or admission, to which he is a stranger." *State v. Fenton*, 499 S.W.2d 813, 816 (Mo.App.1973). Disclosure of a co-actor's guilty plea and plea bargain is not prejudicial in all instances; a determination is to be made on a case-by-case basis. *State v. Jordan*, 627 S.W.2d 290 (Mo. banc 1982).

■ In the case at bar, defense counsel made a motion in limine trying to prevent the plea agreement from being referred to by the state during *voir dire*. He renewed his objection after the state attempted to inform the jury about the agreement. Discussion was had on the subject and the court allowed a question in conformity with *State v. Hobby*, 706 S.W.2d 232 (Mo.App. 1986). In its final form, the question finally propounded by the state read:

I want to ask you, is there anyone here with the combination of the fact that we have made an agreement for this man's testimony, and the fact that he has a prior criminal conviction, that would cause you to automatically disbelieve anything he has to say before he ever testifies?

No juror responded to the question.

The question was proper under *Hobby*. As this court pointed out in *Hobby*, *voir dire* is the most practical method of probing jurors' minds to ascertain which jurors will be fair and impartial and which exhibit bias and prejudice. *Id.* at 233. The state is entitled to know if any prospective juror would automatically disbelieve a testifying accomplice because of his record and because of the plea bargain made in exchange for his testimony. *Id.* at 234; *See also State v. Roseman*, 583 S.W.2d 232, 233–34 (Mo.App.1979). A trial court enjoys considerable discretion in controlling *voir dire*. *Hobby*, 706 S.W.2d at 233. This discretion was not abused in allowing the state to inform the jury about the plea bargain and inquire about possible prejudice resulting therefrom.

Mr. Reynolds also contends that it was error for the trial court to allow the prosecutor to question Leo Butler, during direct examination, on the terms and conditions of the plea agreement. Defense counsel did not object to the testimony. In fact, during a bench conference he indicated he did not have any objection to the prosecutor's covering the charges pertaining to the agreement. Arguably, this constitutes a waiver of review on this point.

■ Even assuming *arguendo* that there was no waiver, the failure of defense counsel to object to the testimony about the plea agreement, preserves nothing for review. A pretrial ruling in limine is interlocutory in nature; the trial court can reverse its ruling during trial. *State v. Stimmel,* 800 S.W.2d 156, 158 (Mo.App.1990). Defendant is not relieved of the responsibility to make timely objection at trial. Failing to object preserves nothing for review. *Id.*

■ A review for plain error also reveals no error. It is proper for a prosecutor to elicit testimony during direct examination of a state's witness regarding any plea agreements or promises made to that witness in anticipation of impeachment efforts by the defense. *State v. Leisure,* 810 S.W.2d 560, 572 (Mo.App.1991). During opening statement, counsel for Mr. Reynolds extensively detailed Mr. Butler's plea agreement, although the state made no reference to the plea agreement in its opening statement. Despite Mr. Reynolds' claim on appeal that outlining the plea agreement was essential because the prosecutor did not reveal the entire plea agreement during *voir dire,* the prosecutor could justifiably anticipate that Mr. Butler would be cross-examined by defense counsel as to the agreement in an effort to impeach Mr. Butler's testimony. Defense counsel did, in fact, vigorously cross-examine Mr. Butler as to the terms of the agreement. It was not plain error for the trial court to allow the prosecutor during direct examination to probe the plea agreement. *See State v. Borden,* 605 S.W.2d 88, 91 (Mo. banc 1980). Point I is denied.

■ In Point II, Mr. Reynolds contends the trial court erred in refusing to modify the reasonable doubt instruction. He bases his contention on the definition of reasonable doubt as proof that leaves the jury "firmly convinced of the defendant's guilt," claiming that this language diminishes the quantum of proof required by the due process clause. He cites *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), as authority for his contention. This argument has been considered and rejected by the Missouri Supreme Court and by this court in similar cases. *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991); *State v. Barnard,* 820 S.W.2d 674, 681 (Mo.App.1991). Point II is denied.

■ In his third point, Mr. Reynolds contends that the trial court erred in overruling his motion for discovery of the arrest and conviction reports of witnesses, specifically that of Leo Butler. He claims that counsel's ability to cross-examine Mr. Butler was severely constricted by Mr. Reynolds' lack of knowledge of any pending municipal charges and whether there existed any plea agreements concerning such charges. In his brief, Mr. Reynolds acknowledges that the hearing on his motion for discovery is not contained in the record on appeal although he states that the trial court overruled the defendant's motion. It is impossible to tell from the record whether or not this is true. There is nothing to indicate, outside of Mr. Reynolds' assertion in his brief and his motion for new trial, that this motion was overruled. "Allegations asserted in an appellate brief which are unsupported by the record cannot form the basis of error on appeal." *State v. Wolford,* 754 S.W.2d 875 (Mo.App.1988).

Moreover, the record reveals that the state filed suggestions in opposition to Mr. Reynolds' motion for discovery agreeing, in compliance with Rule 25.03(a)(7) to disclose the prior felony and misdemeanor criminal convictions of persons that the state intended to call as witnesses. The state advised Mr. Reynolds that Mr. Butler had a misdemeanor trespass conviction and the same murder charge as that pending against Mr. Reynolds, while noting that defense counsel was in possession of a copy of Mr. Butlers' written plea agreement. The state also informed Mr. Reynolds that no "deals" or promises of leniency had been made

regarding the state's endorsed witnesses and promised to update defendant in the event any deals or promises were made with the state's witnesses. It appears, therefore, that even if the motion was denied because Mr. Reynolds received all information to which he was entitled, he was in no way prejudiced. Mr. Reynolds does not argue the existence of information which the state failed to disclose in contravention of its promise to do so. Point III is denied.

In Point IV, Mr. Reynolds complains that the trial court erred in overruling his oral motion in limine and trial objections to the state's exhibit No. 31, an 8 × 10 high school graduation photograph of Gary Chase. Mr. Reynolds contends that the prejudicial effect of the photograph outweighed its probative value. He also argues that in light of the fact that he was willing to stipulate to the victim's identity, the photograph should have been excluded.

■ The trial court enjoys broad discretion in the admissibility of photographs. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc) *cert. denied*, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The photograph of Gary Chase was relevant as identification of the victim. *State v. Sweet*, 796 S.W.2d 607, 615 (Mo. banc 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Mr. Reynolds' offer to stipulate is irrelevant. A photograph will not be found inadmissible because a defendant is willing to stipulate to some of the issues involved or because other evidence could have described what is depicted in the photo. *State v. Schneider*, 736 S.W.2d 392, 403 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988); *State v. Merchant*, 791 S.W.2d 840 (Mo.App.1990). The trial court did not abuse its discretion in allowing the photograph to be admitted as evidence. Point IV is denied.

The judgment of conviction is affirmed.

All concur.