

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102965 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | 1211-CR04906-01 |
| | ) | |
| DARRELL I. BOLDEN, | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Appellant. | ) | Filed: December 6, 2016 |

### Introduction

This case presents the issue of whether a trial court may constitutionally allow an unrepresented defendant to waive his right to counsel when the trial court at the same time has reason to doubt the defendant's competency to stand trial and has not yet resolved that issue. We conclude a trial court cannot.

Darrell I. Bolden (Defendant) appeals the judgment entered upon his conviction of two counts of first-degree robbery and two counts of armed criminal action. His primary argument concerns the trial court's decision to allow him to proceed *pro se* in this case. We note at the outset the irony here: during the pendency of the present case, Defendant was convicted of multiple counts of first-degree robbery and armed criminal action in St. Louis County, after a trial at which he was represented by counsel because the trial court

denied his request to proceed *pro se*.[1] Defendant appealed his St. Louis County convictions to this Court, arguing that the trial court erred in denying his request to proceed *pro se*, and this Court affirmed. Now we address the opposite claim by Defendant: that the trial court here erred in *granting* his request to proceed *pro se*. We consider the limited question of whether Defendant should have been permitted to waive counsel while unrepresented during the pendency of his competency determination, prior to trial.

Due to the overriding importance of the right to counsel generally, and specifically as it relates to the determination of a defendant's competency, not only in this case but in every case, we cannot overlook the violation of Defendant's right to counsel during his competency determination, regardless of the fact that it was Defendant's desire to remain unrepresented and that the ultimate result of the competency determination confirmed his desire that he could proceed *pro se*. However, we do not find that a new trial is necessary at this point, given that Defendant did undergo a competency examination at the time of the determination of whether he could proceed *pro se*. We remand to the trial court to conduct an evidentiary hearing on the sufficiency of the competency report, with Defendant represented by counsel, and to make a new finding as to whether Defendant was competent to proceed *pro se* at the time of his trial in this matter.

## Background

The State charged Defendant with two counts of first-degree robbery and two counts of armed criminal action based on an incident that took place on May 5, 2012. Viewed in the light most favorable to the verdict,[2] the evidence showed that Defendant

---

[1] We take judicial notice of this Court's file in State v. Bolden, 489 S.W.3d 821 (Mo. App. E.D. 2015) (per curiam).
[2] State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005).

2

entered a Check n' Go store in St. Peters holding a gun and wearing a heavy coat and a ski mask. There were two women inside, one was an employee and one was a customer. The customer had placed $400 in cash on the counter to pay for a wire transfer transaction.

Defendant ordered the women to get behind the counter and forced them to kneel. He took the $400 on the counter and removed an additional $1500 in cash from the cash drawer. He demanded that the employee open the safe. She entered the code for the safe and informed Defendant that the safe had a delay and would not open for five minutes. Defendant left the store, and the employee pressed the panic button to summon the police.

Police were not initially able to determine Defendant's identity, but approximately four months after the robbery occurred, they received information implicating Defendant. At that time, Defendant was detained in the St. Louis County Jail on other charges.[3] After waiving his *Miranda* rights, Defendant admitted to the robbery, gave a written statement, and made notations on still photographs from the store's surveillance video indicating that he was the man who committed the robbery.

While awaiting trial, it appears Defendant was not represented by an attorney, and nothing in the trial court's docket sheet indicated whether Defendant had appointed counsel during the several months before the trial court considered his request to waive counsel. The reason for this is unclear from the record, but Defendant filed several motions and letters with the court *pro se* over an approximately nine-month period between his indictment and a pretrial hearing on May 5, 2014. At that May 5, 2014 hearing, the trial court took up Defendant's request to waive counsel and represent himself. After informing

---

[3] We note that resulting from this arrest in St. Louis County, Defendant was eventually convicted after a trial in February of 2014 of three counts of first-degree robbery, a count of attempted first degree robbery, and three counts of armed criminal action. This resulted in a cumulative sentence of life plus a consecutive term of 25 years, which this Court upheld on appeal.

3

Defendant of the ranges of punishment he faced for each offense if convicted, and after ensuring Defendant understood that he was entitled to appointment of a public defender as well as what the assistance of an attorney might provide to his defense, the trial court stated the following:

> The Court finds the Defendant has made a knowing and intelligent waiver of his right to assistance of an attorney. The Court permits the Defendant to waive the right to representation and the Court considers whether to – whether or not to permit the [D]efendant to try without legal counsel depending on the current motion[4] the State has filed. . . . [T]he State has filed an order for psychiatric examination of [Defendant].

The trial court heard argument from both the State and Defendant on the State's motion, and proceeded to grant the State's motion, giving the following rationale:

> [T]his isn't to be demeaning to you[, b]ut because . . . there[ are] four life terms hanging over your head, I don't find your behavior at this point to be particularly rational in denying the help that an attorney could give you. So I'm going to order a psychiatric examination, and the Department of Mental Health will prepare that and then report back to me the detailed findings as to whether or not you have a mental disease or defect and whether or not . . . you have or lack the capacity to understand the proceedings to assist in your defense. And a recommendation to me as to whether you have mental fitness to proceed.

After receiving the report from this examination, the trial court followed the report's recommendation and found Defendant competent. The trial court allowed Defendant to proceed to trial without an attorney. The jury found Defendant guilty of all charges, and the trial court sentenced him as a prior and persistent offender to consecutive terms of life in prison for each count of first-degree robbery, and 25 years for each count of armed criminal action. This appeal follows.

---

[4] This motion is not included in the legal file on appeal.

4

## Discussion

Defendant raises two points on appeal. First, Defendant argues that the trial court erred in allowing him to proceed *pro se* before determining he was mentally competent to stand trial. In Point II, Defendant argues that the trial court erred in failing to dismiss the charges against him due to excessive delay by the State in bringing him to trial, thus violating federal and Missouri constitutional protections, as well as Missouri statute, Section 545.780, RSMo. (2000). We discuss each in turn.

## Point I

Defendant argues that the trial court violated his right to counsel under the Sixth Amendment to the United States Constitution and Article I, section 18(a) of the Missouri Constitution, by determining he had knowingly and intelligently waived his right to counsel before ordering an examination under Section 552.020, RSMo. (Supp. 2011), to determine Defendant's mental fitness to proceed, which left him deprived of his right to counsel during his competency determination. On this point, we must remand.

As an initial matter, Defendant requests that we review his claim for plain error under Rule 30.20[5] because his error is unpreserved. "A constitutional claim must be made at the first opportunity to be preserved for review." State v. Murray, 469 S.W.3d 921, 925 (Mo. App. E.D. 2015) (citing State v. Fassero, 256 S.W.3d 109, 117 (Mo. banc 2008)). This Court has held that we cannot expect a defendant to object to his own motion to represent himself. Murray, 469 S.W.3d at 925. In Murray, however, the defendant had standby counsel, who included the claim that the trial court erred in allowing the defendant to represent himself in the motion for new trial; thus, this Court concluded the issue was

---

[5] All rule references are to Mo. R. Crim. P. (2016) unless otherwise indicated.

raised at the first opportunity. Id. at 925-26. Here, the trial court eventually appointed standby counsel for Defendant's trial, but this issue was not included in his motion for new trial. Thus, we find it was not preserved in this instance.

Generally, our review of unpreserved error under Rule 30.20 is a two-step process. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009). First, we determine "whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." Id. (quoting State v. Brown, 902 S.W.2d 278, 284 (Mo. banc 1995)) (internal quotation omitted). "[P]lain errors are those which are evident, obvious, and clear." Baumruk, 280 S.W.3d at 607 (quoting State v. Scurlock, 998, S.W.2d 578, 586 (Mo. App. W.D. 1999)). If we find plain error, then we "proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." Baumruk, 280 S.W.3d at 607-08. In the case of a Sixth Amendment violation, courts have found this to be a structural error that is presumptively prejudicial and not subject to harmless error analysis. State v. Kunonga, 490 S.W.3d 746, 766-67 (Mo. App. W.D. 2016) (citing U.S. v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006); Strong v. State, 263 S.W.3d 636, 647 (Mo. banc 2008)). Drawing from this authority, where such a violation constitutes a plain error, we presume manifest injustice or a miscarriage of justice occurred.

Here, we find the trial court committed an evident, obvious, and clear error in allowing Defendant to waive counsel without representation of an attorney before determining his competency. The right to counsel, along with the converse right to self-representation, are both protected by the Sixth Amendment. See Faretta v. California, 422 U.S. 806, 818-21 (1975); see also State v. Black, 223 S.W.3d 149, 153 (Mo. banc 2007)

6

(applying same analysis to dual claim of violation of Sixth Amendment and Mo. Const. art. I § 18(a); recognizing Missouri Constitution protects right of self-representation). However, because the right to counsel is so critical to the defense of an accused, the Constitution requires that "a defendant choosing self-representation must do so 'competently and intelligently.'" Godinez v. Moran, 509 U.S. 389, 400 (1993) (quoting Faretta, 422 U.S. at 835). This requires a trial court to undergo a "two-part inquiry," determining both that the defendant is competent to stand trial and additionally that the waiver of counsel is knowing and voluntary. Godinez, 509 U.S. at 400-01; see also U.S. v. Turner, 644 F.3d 713, 721 (8th Cir. 2011) ("Before permitting a defendant to waive counsel, the trial court must be satisfied that the defendant is competent to stand trial"). Only the first part, competency, is at issue here.

Three different types of competency can come into play regarding a particular defendant: competency to stand trial, competency to waive counsel, and competency or ability to conduct the defendant's own defense without assistance of an attorney. The standard for determining a defendant's competency to stand trial is the same for competency to waive counsel. Godinez, 509 U.S. at 396-97 (rejecting the idea that "the competency standard for . . . waiving the right to counsel is higher than the competency standard for standing trial"). Under this standard, a court must find that the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." Godinez, 509 U.S. at 396 (quoting Dusky v. United States, 362 U.S. 402 (1960)) (internal quotation omitted). Essentially, a defendant who is competent to stand trial is also competent to waive counsel.

7

Regarding the third type of competency, this issue arises when a defendant who has validly waived counsel desires to proceed to trial, rather than pleading guilty. The United States Supreme Court has held that the "Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Indiana v. Edwards, 554 U.S. 164, 178 (2008). Thus, the United States Supreme Court has indicated that states may choose to impose a higher competency standard upon *pro se* defendants who wish to conduct their own trials. The Missouri Supreme Court has acknowledged this principle and reiterated that it is the role of trial courts "to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." State v. Baumruk, 280 S.W.3d 600, 610 (Mo. banc 2009) (quoting Edwards, 554 U.S. at 177); see also State v. Osborn, 318 S.W.3d 703, 710 (Mo. App. S.D. 2010) (noting "Edwards treats mental competency to stand trial as a threshold issue to consideration of a defendant's mental competency to self-represent at trial").

Here, the trial court found Defendant to have made a knowing and voluntary waiver of counsel while unrepresented, but immediately thereafter the trial court ordered an examination to determine Defendant's competency. We note the State's argument that the trial court did not order the examination to determine Defendant's threshold competency to stand trial or waive counsel, but rather did so out of concern for Defendant's ability to conduct a trial on his own, in other words, that the trial court was seeking to determine only the third type of competency we identified above, and had implicitly found Defendant to be competent to stand trial and waive counsel. However, the trial court also told Defendant

8

that it would receive a report regarding whether "you have or lack the capacity to understand the proceedings to assist in your defense." The trial court's order was for a report pursuant to Section 552.020, which relates to the threshold competency standard to stand trial and to waive counsel. Thus, even assuming part of the trial court's concern was Defendant's ability to conduct his own trial without an attorney, the trial court also expressed concern regarding Defendant's threshold competency. Thus, the issue remains whether Defendant was competent to proceed *pro se* at that point.

While we find no Missouri or United States Supreme Court case dealing with facts similar to those here, the United States Court of Appeals for the Sixth Circuit addressed a similar situation in U.S. v. Ross, 703 F.3d 856 (6th Cir. 2012). The district court there had determined the defendant validly waived counsel while unrepresented, yet then ordered a hearing to ensure the defendant was competent to stand trial. Id. at 870. The Sixth Circuit reversed, noting the following:

> We do not dispute the wisdom of a judge's compliance with the duty to assure throughout the proceedings that a defendant is competent to stand trial. But when that competency is at issue, both the Constitution and governing statutes require that the defendant be represented by counsel whose duty it is to assure that the evidence supporting competency is closely examined.

Id. The Ross court found this particularly important in a case where the defendant is arguing he is competent, "leaving no one to examine and challenge the evidence." Id. at 871. Thus, the court concluded that "the Constitution requires a defendant to be represented by counsel at his own competency hearing, *even if he has previously made a knowing and voluntary waiver of counsel.*" Id. (emphasis added). The court noted that the fact that the district court doubted the defendant's competency "should have triggered

9

appointment of counsel at least until the competency to stand trial issue was resolved." Id. at 869.

This is exactly the situation we have here: though the trial court determined Defendant's waiver of counsel was knowing and voluntary even though Defendant was unrepresented, it is clear from the record that the trial court believed Defendant's threshold competency was in question. Thus, the trial court should have appointed counsel to represent Defendant at least until it had resolved the question of Defendant's competency. See id.; U.S. v. Klat, 156 F.3d 1258, 1263 (D.C. Cir. 1998) (finding defendant was denied right to counsel where trial court doubted defendant's competency yet failed to appoint counsel during pendency of competency issue).

We note that the trial court was not required to order a competency evaluation and certainly could have made its own finding that Defendant was fit to proceed, but the trial court chose to order an examination out of an abundance of caution and for Defendant's own protection, and taking this action to ensure Defendant's competency in such a context was very appropriate and commendable here. But our case here is very unique in that Defendant was unrepresented. Defendants usually have or are appointed counsel before arraignment and certainly by the time a trial court is considering a waiver of counsel or determining the defendant's competency. Here, Defendant was unrepresented at the time he waived counsel and underwent a subsequent psychiatric examination, and therein lies the cardinal problem.

Turning to the remedy, Defendant argues he is entitled to a new trial due to the deprivation of counsel here. While this is often the appropriate remedy where a defendant's Sixth Amendment right to counsel is violated, we do not find such a remedy necessary

10

under the circumstances here. This case is distinct from others where though it was clear the defendant's competency was in question, the trial court never ordered a competency evaluation. In such cases, courts rightly find that there are difficulties in determining competency retroactively and often a new trial is appropriate. See Pate v. Robinson, 383 U.S. 375, 387 (1966) (finding, where court had denied defendant competency hearing before trial, determination of competency six years after the fact unworkable). However, here, the trial court did in fact order a contemporaneous competency evaluation. Cf. Eley v. Bagley, 604 F.3d 967 (6th Cir. 2010) ("Retroactive determinations of competency are difficult, and any such determination must be based on evidence derived from knowledge contemporaneous to trial" (internal quotation omitted)).

Because here there does exist a contemporaneous report regarding Defendant's competency, we find the trial court can conduct a hearing as to the validity of that report and make a finding under the procedures set forth in Section 552.020. We also instruct the trial court to ensure Defendant is represented by counsel, either private counsel or appointed counsel, at that hearing. If, after the hearing, the trial court finds that the report cannot establish Defendant's competency at the time of trial, then the trial court shall set aside the judgment and sentence and grant a new trial. See Pate, 383 U.S. at 387. If, however, the trial court determines from the evidence that Defendant was competent to stand trial and to conduct his own trial at the time, then the trial court "shall certify the transcript of the hearing and its determination and findings to this court to be made a part of the transcript in the cause for determination and disposition of the appeal upon the record as supplemented." State v. Nebbit, 455 S.W.3d 79, 89 (Mo. App. E.D. 2014) (quoting State v. Mitchell, 611 S.W.2d 211, 214 (Mo. banc 1981)). Point granted.

11

Though we remand, we must also consider Defendant's argument that the trial court should have dismissed the charges against him altogether due to the State's delay in bringing his case to trial. We find it to be without merit.

We review *de novo* whether Defendant's right to a speedy trial has been violated, while at the same time giving deference to the trial court's factual findings in ruling on a motion to dismiss. State v. Sisco, 458 S.W.3d 304, 313 (Mo. banc 2015). "The United States and Missouri Constitutions provide equivalent protection for a defendant's right to a speedy trial." State ex rel. McKee v. Riley, 240 S.W.3d 720, 729 (Mo. banc 2007). There is no bright-line test to determine a violation of this right, but rather a "court must balance four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." Id. (citing Barker v. Wingo, 407 U.S. 514, 533 (1972)). Section 545.780 "[does] not . . . expand the constitutional right to a speedy trial, but rather . . . provide[s] a mechanism for bringing a case to trial when a defendant seeks a timely resolution of his or her case." McKee, 240 S.W.3d at 727.

Turning to the factors for determining a violation of the right to a speedy trial, until there has been a period of delay that is presumptively prejudicial, we need not consider the other three factors. State ex rel. Garcia v. Goldman, 316 S.W.3d 907, 911 (Mo. banc 2010). In Missouri, that is a delay of eight months, and it begins at the time of a formal indictment or information, or the arrest, whichever comes first. See id.

Here, Defendant was incarcerated beginning on September 12, 2012, in connection with other robbery incidents in St. Louis County. A grand jury in St. Charles County indicted Defendant in this case on August 23, 2013. Defendant's trial began on March 3,

12

2015. Beginning from the date of Defendant's indictment, this delay of over 18 months is presumptively prejudicial. See id. Thus, we consider the remaining three factors.

Regarding the second factor, the reason for the delay, different reasons weigh differently against the State:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Sisco, 458 S.W.3d at 314 (quoting Barker, 407 U.S. at 531). However, "[d]elays attributable to the defendant weigh heavily against the defendant." Sisco, 458 S.W.3d at 314 (internal quotation omitted).

Here, a number of circumstances contributed to the delay. On September 13, 2013, Defendant filed his first request for a speedy trial. Thereafter, he filed a number of motions, including requests for discovery, motions to suppress, and motions to quash the indictment. Defendant also wrote several letters to the trial court during the pendency of his case. It also appears from the docket sheet that there was a problem in serving Defendant's warrant. The warrant was withdrawn in November of 2013 and eventually served on April 21, 2014.

On May 5, 2014, the court held a status hearing at which it considered Defendant's waiver of counsel and granted it. As discussed above, the trial court then ordered a psychiatric examination to determine Defendant's competency. The trial court also considered Defendant's motion to dismiss for violation of his right to a speedy trial. The State argued that there had been other pending robbery charges against Defendant in St.

13

Louis County that had been disposed of in the meantime. The trial court denied Defendant's motion.

On August 11, 2014, the trial court held a hearing on a motion for continuance filed by the State requesting additional time to complete the psychiatric examination. The State claimed that Defendant had asked the doctor conducting the examination to review additional records, which Defendant disputed, but Defendant consented to the continuance until September 15, 2014.

On September 15, 2014, the trial court issued an order noting that the State was contacted by the Missouri State Hospital, which said they needed additional time to complete their report of Defendant's psychiatric examination. The trial court continued the case for good cause shown until November 17, 2014. On that date, the trial court found the report had not yet been completed.

On January 23, 2015, the trial court held a hearing at which it determined that Defendant was competent to stand trial based on the report of Defendant's psychiatric evaluation. The case proceeded to trial as scheduled on March 3, 2015.

In weighing the reasons for delay here, it appears that between the indictment on August 23, 2013, and the trial court's ordering of the psychiatric examination on May 5, 2014, several things contributed to the delay. Defendant had other charges pending in St. Louis County, which were resolved during this time period. This is a justifiable reason for delay and is not weighed heavily against the State. See Sisco, 458 S.W.3d at 314. Additionally, Defendant filed a number of motions during this time. While he has a legal right to do so, the delay caused by adjudication of these motions is attributable to Defendant. See id. at 316. Finally, during this time period, it appears at least some of the

14

delay is due to the State's inability to serve the arrest warrant. This delay is attributable to the State, but because there is no evidence the State did so deliberately to hamper the defense, it is weighed less heavily against the State. See State v. Fleer, 851 S.W.2d 582, 597 (Mo. App. E.D. 1993).

The further delay between May 5, 2014, and Defendant's trial on March 3, 2015, was entirely due to the psychiatric examination of Defendant. This is a justifiable reason for delay and, although weighed against the State, is weighed less heavily.[6] See State v. Owsley, 959 S.W.2d 789, 794 (Mo. banc 1997) (noting only delay attributable to State was request for competency exam and extension of time for completion of exam).

Weighing all of these, some of the delay is due to Defendant's pretrial motions, but beyond that, the reasons for delay were largely neutral and justifiable. Though such delays are weighed against the State, we see no delay that should weigh heavily against the State due to any deliberate attempt to hamper the defense.

The third factor is Defendant's assertion of his right to a speedy trial. Here, Defendant made multiple requests for a speedy trial, beginning on September 13, 2013. He asserted his right early in the proceedings, and this factor is therefore weighed in his favor. See State v. Pate, 469 S.W.3d 904, 909 (Mo. App. E.D. 2015).

Finally, the most important factor in our analysis is any resulting prejudice to Defendant. State v. Newman, 256 S.W.3d 210, 216 (Mo. App. W.D. 2008). We consider three additional factors in determining prejudice, the third of which is "the most vital to the analysis": (1) the oppressiveness of pretrial incarceration, (2) whether it unduly heightened

---

[6] We note the State's argument that this period of time should be excluded from the analysis; however, that applies only where the defendant himself puts his mental competency at issue. See State v. Brown, 502 S.W.2d 295, 301-02 (Mo. 1973).

15

the defendant's anxiety, and (3) the impairment of the defense. Id. (quoting State v. Bell, 66 S.W.3d 157, 165 (Mo. App. S.D. 2001)). "[F]ailure to present evidence of actual prejudice weighs heavily in favor of the government." Newman, 256 S.W.3d at 217 (quoting State v. Perry, 954 S.W.2d 554, 566 (Mo. App. S.D. 1997)).

Here, there is no evidence that Defendant's pretrial incarceration unduly heightened his anxiety, and he makes no argument to that effect. The incarceration was not unduly oppressive here, where he was incarcerated already as a result of other arrests and convictions. Finally, he does not argue his defense was impaired by the delay, nor do we see any evidence of impairment in the record. The fact of incarceration alone here is not sufficient to establish prejudice. See State v. Greenlee, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010) (incarceration and anxiety may be insufficient to establish prejudice absent evidence of impairment of defense). The lack of evidence of prejudice weighs heavily in favor of the State. See Newman, 256 S.W.3d at 217.

Given all of the foregoing, particularly persuaded that Defendant was not prejudiced here by any delay, we find Defendant's constitutional right to a speedy trial was not violated. The trial court did not err in failing to dismiss the charges against Defendant for this reason. Point denied.

## Conclusion

The trial court did not err in failing to dismiss the charges against Defendant for any violation of Defendant's right to a speedy trial, and we affirm the trial court's judgment in this respect. However, the trial court plainly erred in permitting Defendant while unrepresented to waive his right to counsel while at the same time finding that his competency was at issue. This constitutes a denial of Defendant's Sixth Amendment right

16

to counsel during the resolution of the issue of Defendant's competency. However, because the trial court did order a psychiatric evaluation under Section 552.020 of Defendant at the time, we remand to the trial court to conduct an evidentiary hearing on the sufficiency of the competency report, with Defendant represented by counsel, and to enter an order consistent with this opinion.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS IN PART.

_____
Gary M. Gaertner, Jr., Judge

James M. Dowd, P. J., concurs.
Kurt S. Odenwald, J., concurs.